UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GUSTAVO FIGUEROA, II  CIVIL ACTION
    *Individually and on behalf of other*
    *similarly situated individuals*  NO. 18-6109

VERSUS  SECTION: M (5)

HARRIS CUISINE LLC,
HARRIS JMH PROPERTIES LLC, and
JOHN M. HARRIS

## ORDER & REASONS

The plaintiff, Gustavo Figueroa II ("Figueroa"), individually and on behalf of other similarly-situated individuals, filed a motion to conditionally certify the FLSA collective and for Court approval of the opt-in notice.[1] The defendants, Harris Cuisine LLC, Harris JMH Properties LLC,[2] and John M. Harris (collectively "Defendants"), respond in opposition.[3] Figueroa submits a reply in support.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I. BACKGROUND**

This case arises out of Figueroa's employment with Defendants as a server at Lilette Restaurant.[5] Figueroa brings this action, individually and on behalf of all other similarly-situated individuals, against Defendants asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and Louisiana state law.[6] Figueroa alleges that Defendants routinely forced its servers, including Figueroa, to contribute to an illegal and arbitrarily-determined tip pool and to perform "side work" for which servers such as Figueroa were not paid the minimum

---

[1] R. Doc. 22.
[2] Defendant Harris JMH Properties LLC avers that it did not employ Figueroa and intends to file a motion for summary judgment. R. Doc. 26 at 2 n.1.
[3] *Id.*
[4] R. Doc. 33.
[5] R. Doc. 1.
[6] *Id.*

1

wage. Further, Figueroa alleges that Defendants willfully misclassified the servers as exempt employees.[7]

The following facts are drawn from Figueroa's verified complaint, in which he describes the Defendants' alleged practices and customs during his employment at Lilette from February 7, 2018, through May 3, 2018. At that time, the restaurant had at least 28 employees, which included servers, hostesses, food runners, bussers (busboys), a dishwasher, a polisher, cooks, and managers. Defendants paid the servers on an hourly basis ($2.13 per hour) and allowed the servers to keep only a percentage of the tips they received each shift regardless of whether it was a lunch or dinner shift and no matter how much support staff was working, if any. Per Defendants' policy and procedure, Defendants ordered the servers to share an arbitrary percentage of their tips with the hostesses, food runners, and bussers (who were paid hourly); with the polisher (who was paid only through the tip pool); and with the managers (who were paid salary). Defendants unilaterally determined the amount the servers would contribute after each shift, which differed by the shift. In Figueroa's experience, his tip contribution ranged from 25% to 48% of the tips he earned per shift.[8] Figueroa alleges that the tip pool arrangement was not disclosed to him when he was hired, and that Defendants took a tip credit as part of its compensation. By ordering the servers to share tips with other non-tipped employees, Figueroa alleges, Defendants were able to avoid giving the managers and other hourly employees raises and were able to avoid paying certain other employees, like the polisher, altogether.[9]

The "side work" consisted of various staging and cleaning tasks, including setting out or storing chairs and tables, and cleaning the restaurant's serveware, restrooms, and dining areas. Figueroa alleges the Defendants did not inform Figueroa that he would be required to perform such work, nor did they pay Figueroa or other servers like him the hourly rate for this work,

---

[7] *Id.* at 4-8.
[8] *Id.* at 4-5.
[9] *Id.* at 7.

2

which was performed before and after each shift.[10] Figueroa alleges that Defendants showed reckless disregard for the fact that their failure to pay him completely for the tips he received, and appropriately for the hours he performed "side work," was in violation of the law.

Figueroa seeks to represent a class of servers who were employed by Lilette in the three years prior to the filing of the complaint and who participated in the tip pool without receiving the full amount of tips earned for each shift or who performed side work without receiving hourly compensation. Figueroa prays for a declaratory judgment finding that Defendants willfully violated the FLSA and Louisiana conversion and unjust enrichment law, and an award of damages for unpaid compensation to all class members, attorney's fees, and costs.[11]

## II. PENDING MOTIONS

On December 7, 2018, Figueroa filed the instant motion for conditional certification of the proposed FLSA class and court approval of the opt-in notice and procedure.[12] Figueroa seeks conditional class certification of "[a]ll persons who are or have been employed by Lilette as servers (or other job titles performing similar duties) who participated in the tip pool established by the Defendants without receiving the entire amount of tips earned for each shift or who performed 'side work' directed by the Defendants without receiving compensation for each hour worked performing 'side work.'"[13] Figueroa argues that conditional class certification is appropriate because, as Figueroa submitted in his verified complaint, there existed numerous servers at Lilette like Figueroa who were subject to the tip-pool policy and side-work requirements and who did not receive just pay.[14] Figueroa also seeks an order that: (1) approves a three-year statute of limitations for the class beginning from the date the Court enters the order conditionally certifying the class; (2) directs Defendants to disclose the contact information for

---

[10] *Id.* at 6.
[11] *Id.* at 22-24.
[12] R. Doc. 22.
[13] R. Doc. 22-1 at 3.
[14] *Id.* at 11-13.

3

all potential opt-in plaintiffs, including names, last known addresses, cell phone numbers, email addresses, dates of birth, and partial social security numbers; (3) permits his attorneys to provide initial, immediate notice to putative collective action members via U.S. mail, email, text message, and posting at Lilette restaurant; (4) authorizes his attorneys to provide a follow-up notice thirty days following the initial notice via U.S. mail, email, and text message to any putative collective action member who has not already opted in; (5) permits a 90-day opt-in period; (6) permits the putative collective action members to execute consent forms electronically; and (7) approves the proposed notices and notice plan.[15]

Defendants do not oppose the conditional certification of the class or the three-year statute of limitations.[16] However, Defendants argue that Figueroa's proposed definition of the collective should not expand "servers" by the parenthetical, "or other job titles performing similar duties," because Figueroa's complaint and declaration only describe "servers."[17] Defendants also oppose (1) a second notice; (2) disclosure of dates of birth and partial social security numbers of employees; (3) posting the notice at Lilette restaurant; (4) the 90-day opt-in period; and (5) the written notice's invitation for potential opt-in members to contact plaintiff's counsel.[18]

Defendants argue that Figueroa's requests are excessive and should be limited in these respects because the potential class is small and accessible.[19] Defendants submit the declaration of John Harris, owner of Harris Cuisine and Lilette restaurant, who states that, since June of 2015, there are only 25 former and current servers or waiters who are prospective members of the collective, and that 8 of those 25 are currently employed by Harris Cuisine.[20] Because

---

[15] R. Doc. 22 at 2.
[16] R. Doc. 26 at 1. A three-year statute of limitations is appropriate at the notice stage when the plaintiff alleges willful violations of the FLSA, as Figueroa does here. *See* R. Doc. 1; *Gremillion v. Cox Commc'ns La.*, 2017 WL 2688217, at *18-19 (E.D. La. June 22, 2017).
[17] *Id.* at 9-10.
[18] *Id.* at 2.
[19] *Id.* at 5.
[20] R. Doc. 26-3 at 1.

4

Defendants will provide the names, addresses, emails, and cell phone numbers of these individuals, Defendants argue that it is unnecessary to disclose highly sensitive information, such as dates of birth and partial social security numbers. To ensure that all potential class members are contacted, Defendants propose (as was discussed with Figueroa's counsel) that the notice direct recipients to send an email or text message indicating that they had received the notice. Then, a follow-up notice would be appropriate to send only to all non-responders. Defendants also contend that posting the written notice at Lilette would be unnecessary because, unlike older FLSA cases where notice was posted at multiple places of employment, Lilette is a single, small restaurant, and communication by email and text message will be sufficient. Defendants maintain that a 90-day opt-in period is excessive for the scope of the potential class, and a 45- or 60-day period would be preferable, as consistent with other courts' approaches in this district.[21]

Finally, Defendants challenge the portion of Figueroa's notice that invites the potential class members to contact Figueroa's counsel for further information. Defendants suggest that the invitation skews the potential class members' objective perception of the litigation, particularly in light of Figueroa's prior communications with certain putative members, in which he referred to Defendants with expletives. If the Court permits such an invitation, Defendants ask to have their own contact information inserted alongside the plaintiff's.[22]

In response, Figueroa proposes some reasonable compromises. As to the collective definition, Figueroa explains that the parenthetical is meant to include others with similar job titles, such as waiters, who should receive notice to join the suit. In lieu of the parenthetical, Figueroa proposes changing the phrase to "servers or waiters." Next, Figueroa concedes that a 60-day opt-in period is appropriate since Defendants have employed only 25 servers in the past three years, 8 of whom currently work for Defendants. Likewise, Figueroa agrees to forgo the

---

[21] *Id.* at 11-12.
[22] *Id.* at 6-9, 14-15.

5

posted notice at Lilette so long as Defendants ensure its current employees receive notice, which is feasible via mail, email, or text.[23] Figueroa also agrees to forgo the provision of dates of birth and social security numbers of current employees. However, Figueroa maintains his request to obtain dates of birth and partial social security numbers of former employees if Figueroa receives some indication that the individuals do not receive notice, such as returned mail. To that end, Figueroa agrees that the notice should include language enabling any recipient to notify the sender that he or she (a) received the notice and (b) does not want to receive future notice. But, Figueroa wants to remain involved in drafting the notice and still insists upon sending a follow-up notice to all potential plaintiffs who do not respond that they wish to receive no further contact. Finally, Figueroa maintains that the invitation for potential plaintiffs to contact Figueroa's counsel should remain, reasoning that such language has been approved by other sections of this Court, and the opportunity to speak to counsel will aid a meaningful opt-in decision.[24]

### III. LAW & ANALYSIS

#### A. Conditional Class Certification

An employee may sue an employer for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself or herself and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, which requires putative plaintiffs to opt out, a collective action under § 216(b) binds only those employees who affirmatively "opt in" to the suit. *Id.* ("No employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

---

[23] R. Doc. 33 at 2-3.
[24] *Id.* at 4-5.

Courts have taken two different approaches to resolve the issue of whether plaintiffs are similarly situated to a proposed class: the spurious class action approach, which originated in *Shushan v. University of Colo.*, 132 F.R.D. 263 (D. Colo. 1990); and the "two-step" approach, as in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988).  The Fifth Circuit has yet to adopt either test.  However, district courts in this circuit have generally applied *Lusardi*'s "two-step" approach, and this Court will follow that jurisprudence. *See Guidry v. Target Corp.*, 2009 WL 1604591 (E.D. La. June 5, 2009); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (the two-step approach "is the preferred method for making the similarly situated analysis").

The *Lusardi* two-step approach consists of a "notice stage" and a "decertification stage." *Mooney v. Aramco*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  At the notice stage, the court determines, based only on the pleadings and any affidavits that have been submitted, whether the putative collective action members should receive notice of the action. *Id.* at 1214.  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.*  "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination.'" *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).  If the district court finds that the putative collective action members are similarly situated, it conditionally certifies the class and the putative collective action members are given notice and the opportunity to opt in. *Id.* at 1214.  "The action proceeds as a representative action throughout discovery." *Id.*

The decertification stage is precipitated when the defendant, after discovery is largely completed and the matter is ready for trial, files a motion to decertify the class. *Id.*  "At this

7

stage, the court has much more information on which to base its decision, and makes a factual determination of the similarly situated question." *Id.* If the district court finds that the claimants are not similarly situated, it decertifies the class and dismisses without prejudice the opt-in plaintiffs' claims, and the class representatives (*i.e.*, the original plaintiffs) proceed to trial on their individual claims. *Id.* On the other hand, if the district court finds that the claimants are similarly situated, it allows the representative action to proceed to trial. *Id.*

Figueroa seeks conditional certification on behalf of two classes of similarly-situated persons under the notice stage of the *Lusardi* approach. At this first stage, "a plaintiff must show that: '(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.'" *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (quoting *Morales v. Thang Hung Corp.*, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)). In conducting this inquiry, district courts have considered whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (citations omitted). "A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." *Id.*

### 1. Existence of Aggrieved Co-Workers

Defendants do not oppose Figueroa's request to certify the class.[25] Moreover, Figueroa presents sufficient evidence that there are other aggrieved co-workers. In his declaration, Figueroa states that he worked as one of 8 or 9 servers, along with Kristina Bravo, Tracey Canavan, Christina Labbe, Stephanie Lazensky, Jesse Martin, Keenan O'Callaghan, and Zach

---

[25] R. Doc. 26 at 1.

Rogers.[26] The declaration of John Harris, presented by Defendants, corroborates that 8 servers or waiters currently staff Lilette, and that 25 waiters or servers have worked there since June of 2015.[27]

### 2. Aggrieved Co-Workers are Similarly Situated to Plaintiff

"[P]otential class plaintiffs are considered 'similarly situated' to the named plaintiffs if they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Tolentino*, 716 F. Supp. 2d at 649-50 (quotation omitted). "The positions need not be identical, but similar." *Id.* at 650 (quotation omitted). Moreover, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donahue v. Francis Servs., Inc.*, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (citations omitted). Instead, similarly-situated plaintiffs share some factual nexus which binds them together as victims of a particular alleged policy or practice. *Xavier*, 585 F. Supp. 2d at 878 (quoting *Crain v. Helmerick & Payne Int'l Drilling Co.*, 1992 WL 91946, at *4-5 (E.D. La. Apr. 16, 1992)). A district court may deny a plaintiff's motion "to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino*, 716 F. Supp. 2d at 650 (quotation omitted).

In his declaration, Figueroa states that he worked as a server and was not properly paid the amount of tips earned per shift and not paid minimum wage for side work before and after each shift.[28] He further states that all of the servers' tips were pooled, and that all of the servers were assigned side-work tasks for each shift.[29] This evidence shows that there is a factual nexus

---

[26] R. Doc. 22-6 at 1.
[27] R. Doc. 26-3 at 1.
[28] R. Doc. 22-6 at 2-7.
[29] *Id.* at 3, 5.

that binds the putative collective action members as being subject to a common policy or practice.

### 3. Aggrieved Co-Workers Want to Opt In

Figueroa has made a sufficient showing that other workers would want to opt in to a putative collective action. While no plaintiffs have yet filed a notice of consent to join, Figueroa identifies that another section of this Court has conditionally certified a collective action where the plaintiff named two potential opt-in plaintiffs. *Rendon v. Glob. Tech. Sols., LLC.*, 2015 WL 8042169, at *8-9 (E.D. La. Dec. 4, 2015). However, in *Rendon*, the plaintiff asserted that those two co-workers "would be interested in joining this lawsuit." *Id.* at *4-5, *8. There is no such assertion here, where Figueroa has merely identified seven potential opt-in plaintiffs.[30] Nevertheless, considering Defendants' non-opposition to collective certification and the lenient standard at the notice stage of the *Lusardi* inquiry, the Court finds that Figueroa has adequately shown that other workers want to join the litigation and that conditional certification of a collective action is appropriate at this time.[31]

### B. Definition of the Collective

Figueroa originally proposed defining the collective as "[a]ll persons who are or have been employed by Lilette as servers (or other job titles performing similar duties)."[32] Defendants object to the parenthetical as overbroad, arguing that because Figueroa's verified complaint and declaration only refer to "servers," he has not made a *prima facie* case with respect to other kinds of employees.[33] Figueroa maintains that the parenthetical merely serves to prevent unnecessary limitation of the class but concedes that "servers or waiters" would be an appropriate revision.[34]

---

[30] R. Doc. 22-6 at 1.

[31] The Court takes note of Figueroa's declaration, in which he states that his former co-worker, Jesse Martin, admitted speculating that the payment scheme was "completely illegal," and that his former co-worker, Kristina Bravo, wondered "where the money was going." *Id.* at 4. These statements, albeit hearsay, as in *Rendon*, bolster the existence of potential plaintiffs' interest in joining the collective action. *See* 2015 WL 8042169, at *8-9.

[32] R. Doc. 22-1 at 3.
[33] R. Doc. 26 at 9-10.
[34] R. Doc. 33 at 2-3.

The Court agrees with Figueroa's revision. Figueroa's verified complaint and declaration consistently refer to the aggrieved workers as "servers,"[35] and John Harris's declaration describes those holding Figueroa's position to be "waiters/servers." Accordingly, the definition of the class collective shall read, "servers or waiters."

### C. Opt-In Period

While Figueroa originally requested a 90-day opt-in period due to the high turnover rates in the restaurant industry, Defendants urge that the Court adopt a 45- or 60-day period in light of the small, 25-person potential class. Figueroa agrees that a 60-day period will suffice to provide notice.

Sixty-day periods are commonly approved for FLSA actions brought in this district. *Murillo v. Gomez Drywall Contractors Inc.*, 2018 WL 3928182, at *3 (E.D. La. Aug. 16, 2018) (approving 60-day period); *Sandlin v. Grand Isle Shipyard Inc.*, 2018 WL 2065595, at *12 (E.D. La. May 3, 2018) (60 days); *White v. Integrated Electronic Techs. Inc.*, 2013 WL 2903070, at *11 (E.D. La. June 13, 2013) (60 days); *Marshall v. State of La.*, 2016 WL 279003, at *12 (E.D. La. Jan. 22, 2016) (approving 45-day opt-in period in the absence of proof that potential plaintiffs have dispersed or will be hard to locate). Because nearly one-third of the potential class remains currently employed by Defendants, and because the notice procedure outlined below should ensure fair opportunity for potential members to opt in, the Court finds that a 60-day period is adequate to provide all potential claimants notice and opportunity to opt in.

### D. Manner of Notice and Reminder Notice

The parties agree that notice is appropriate via U.S. mail, email, and text message. Figueroa no longer insists upon posting the written notice in Lilette's restaurant, so long as current employees are notified by the previous means. The parties further agree on an electronic consent form. However, the parties disagree as to whether a follow-up notice should issue.

---

[35] R. Docs. 1; 22-6; 26-3 at 1.

11

Defendants suggest including language in the initial notice for the recipient to notify the sender that notice has been received, by texting or emailing in reply.  Upon receipt of confirmation, Defendant posits, there would be no further communication with the recipient, unless and until the plaintiff opts in.  Figueroa agrees that the notice should include language enabling any recipient to notify the sender that he or she (a) received the notice and (b) does not want to receive future notice.  But, Figueroa wants the decision about the precise phrasing of the notice to be joint with Defendants and still insists upon sending a follow-up notice to all potential plaintiffs who do not respond that they do not wish to be contacted.

While reminder notices have been ordered by a court in this circuit, several courts have found follow-up notices unnecessary.  *Compare White*, 2013 WL 2903070, at *9 (permitting a follow-up notice where the plaintiffs bore the cost), *with Richard v. Flower Foods, Inc.*, 222 F. Supp. 3d 516, 527 (W.D. La. Nov. 28, 2016) (denying a series of two reminder notices in favor of posting notice at place of employment), *and Roberts v. S. B. S. Welding, LLC*, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) (finding reminder notices unnecessary and potentially misconstrued as an encouragement by the court to opt in).  In *Gremillion v. Cox Communications Louisiana*, the court would not issue a follow-up notice unless the plaintiff showed good cause or the parties agreed to a reminder.  2017 WL 2688217, at *5.  The Court finds *Gremillion* persuasive and will not order a reminder notice, unless Figueroa later shows good cause or the parties agree to the reminder.

### E.      Disclosure of Dates of Birth and Partial Social Security Numbers

Figueroa contends that dates of birth and the last four digits of putative class members' social security numbers will aid notification in the event a letter is returned as undeliverable or an email bounces back.  While Figueroa concedes that he does not need this information from current employees of Lilette, Figueroa requests it for former employees who do not respond that

they have received notice.  Defendants oppose disclosing this information because it is invasive of the privacy of individual employees.

The disclosure of dates of birth and the last four digits of social security numbers raises significant privacy and security concerns that outweigh the plaintiff's risk of failing to contact the potential class in this case, where notice will be provided via mail, email, and text message. *See White*, 2013 WL 2903070, at *10 (persons will be unlikely to change email addresses when they change residences); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516 (W.D. Tex. 2015) (same as to cell phone numbers).  Accordingly, until good cause is shown, Defendants will not be required to disclose former employees' dates of birth and partial social security numbers.  However, as Defendants have agreed, they will provide Figueroa with the names, last known addresses, emails, and cell phone numbers of all known members of the putative class.

### F. Proposed Written Notice and Counsel Contact with Putative Class Members

Figueroa submits proposed notices to be sent by U.S. mail, text, and email to putative collective action members and asks the Court to allow plaintiffs to execute their consent forms online using electronic signatures.[36]  It is within the district court's discretion to determine whether the notice gives accurate and timely notice of the collective action to allow the potential class members to make informed decisions about whether to participate. *Escobar v. Ramelli Grp., L.L.C.*, 2017 WL 3024741, at *3 (E.D. La. July 17, 2017) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).

Defendants challenge language in the proposed notices that invites potential collective action members to contact the plaintiff's counsel for further information.  Defendants rely on

---

[36] R. Docs. 22-1 at 24, 22-2, 22-3, 22-4.  Figueroa has not submitted the form of consent for the Court's approval.

13

*Jaso v. Bulldog Connection Specialists LLC*, 2015 WL 11144603, at *6-7 (S.D. Tex. Oct. 15, 2015), where the court actually enjoined *defense* counsel from contacting putative class members. Defendants further argue that if plaintiff counsel's contact information is not stricken, defense counsel's contact information should also be included. Figueroa points to two courts in this district that have adopted identical or substantially similar notices incorporating plaintiff counsel's contact information to allow putative class members to request further information. *See Chaves v. Winn-Dixie Montgomery, LLC*, 2017 U.S. Dist. LEXIS 115466, at R. Doc. 20-3 (E.D. La. July 24, 2017) (notice permits request for further information, directed solely to plaintiff's counsel); *Marshall*, 2016 WL 279003, at *5, *12-13, R. Doc. 28-2 (though defense counsel sought to insert their contact information in notice, the court-approved notice directed potential class members to plaintiff's counsel or an attorney of their choice).

The standard for limiting counsel communications with potential class members was articulated by the United States Supreme Court in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). The Supreme Court reversed the district court's order prohibiting defense counsel from communicating with the potential class. The Supreme Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," reasoning that orders should "limit speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 100, 102.

"As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment concerns. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. Dec. 18, 2003)

(citing *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985)). Furthermore, the movant for an order restricting communications in a putative FLSA collective action must demonstrate "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation." *Jaso*, 2015 WL 11144603, at *6 (citations and quotation omitted).

In requesting a limitation on plaintiff counsel's communications with potential members of the collective action, Defendants point to Figueroa's previous texts to former Lilette employees in which he used expletives to refer to one of the Defendants and arguably mischaracterized the nature of the lawsuit. Defendants suggest that Figueroa's prior communications with potential class members have tainted any communication they might have with plaintiff's counsel. However, Figueroa's exercise of his First Amendment right to speech does not impel the Court to restrict the putative class members' contact with Figueroa's counsel, especially absent any showing that communication with plaintiff's counsel has been or will be abusive or threatens the proper functioning of the litigation. "The mere possibility of abuses does not justify routine adoption of a communications ban." *Garcia v. TWC Admin., LLC*, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015) (quotation omitted). Potential collective action members might have questions or require information about the lawsuit,[37] and allowing potential plaintiffs to communicate with plaintiff's counsel will facilitate informed decisions about whether to opt in to the suit.

Figueroa has not indicated whether he would object to including the defense counsel's contact information in the section of the notice inviting contact for "further information." Therefore, the parties will confer and submit proposed notices to the Court. *See Marshall*, 2016 WL 279003, at *12-13.

---

[37] R. Doc. 33 at 5.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Figueroa's motion to conditionally certify the class (R. Doc. 22) is GRANTED, except that the definition of the class is limited to "servers or waiters."

IT IS FURTHER ORDERED that pursuant to 29 U.S.C. § 216:

A.   The class is conditionally certified as:

All persons who are or have been employed by Lilette as servers or waiters who participated in the tip pool established by the Defendants without receiving the entire amount of tips earned for each shift or who performed "side work" directed by the Defendants without receiving compensation for each hour worked performing "side work" at any time between January 25, 2016, and the present.

B.   Within fourteen (14) days of the date of this Order & Reasons, Defendants shall provide to plaintiff's counsel the names, last-known addresses, email addresses, and telephone numbers (including known cell phone numbers) of all putative collective action members;

C.   Figueroa's proposed written notices to putative collective action members are approved except as to the section of the notices inviting contact for "further information."  The parties shall meet and confer and submit joint revised notices within ten (10) days of the date of this Order.  If the parties are unable to agree on forms of notice, the parties shall each submit (1) their own proposed notices and (2) their objections, with supporting authority, to the opposing party's notices, within ten (10) days of this Order, and request an expedited status conference on the matter.

D.   Counsel for plaintiffs shall have thirty (30) days from the date that the Court approves the revised proposed written notices to transmit notice to the putative collective action members via U.S. mail, email, and text message.

E.   Opt-in plaintiffs are granted a period of sixty (60) days from the date that the notice is mailed, emailed, or texted to execute their consent forms online using electronic signatures, thereby signifying their decision to opt in to the lawsuit.  Within ten (10) days of the

date of this Order, the parties shall meet and confer to submit a consent form to the Court for review and approval.

New Orleans, Louisiana, this 25th day of January, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE